**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| **MARY ANN J.,[1]** | ) | **NO. EDCV 19-1955-KS** |
| **Plaintiff,** | ) | |
| v. | ) | **MEMORANDUM OPINION AND ORDER** |
| **ANDREW SAUL, Commissioner of Social Security,** | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**INTRODUCTION**

Mary Ann J. ("Plaintiff") filed a Complaint on October 11, 2019, seeking review of the denial of her application for Supplemental Security Insurance ("SSI"). (Dkt. No. 1.) On November 19, 2019, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 11-13.) On July 7, 2020, the parties filed a Joint Stipulation ("Joint Stip."). (Dkt. No. 19.) Plaintiff seeks an order reversing and remanding for immediate award of benefits. (Joint Stip. at 15.) The Commissioner requests that the ALJ's decision be affirmed or, in the alternative, remanded for further

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

1

proceedings.  (*Id.* at 15-16.)  The Court has taken the matter under submission without oral argument.

## SUMMARY OF PRIOR PROCEEDINGS

On June 24, 2016, Plaintiff, who was born on July 30, 1961, filed an application for SSI.[2]  (*See* Administrative Record ("AR") 25, 165-69.)  Plaintiff alleged that she was unable to work as of May 1, 2005, due to seizures, blood clots, asthma, and high cholesterol.  (AR 165, 169.)  Plaintiff's onset date was later amended to June 24, 2016, the date of her SSI application.[3]  She had not previously worked.  (AR 25.)  After the Commissioner initially denied Plaintiff's application and reconsideration thereof (AR 51-59, 61-74), Plaintiff requested a hearing.  (AR 87-101.)  Administrative Law Judge Katherine Loo (the "ALJ") held a hearing on November 20, 2018.  (AR 32.)  Plaintiff and a vocational expert testified.  (AR 36-49.)  On December 27, 2018, the ALJ issued an unfavorable decision.  (AR 12-26.)  On August 15, 2019, the Appeals Council denied Plaintiff's request for review.  (AR 1-6.)

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that Plaintiff had not engaged in substantial gainful activities since June 24, 2016, the amended alleged disability onset date.  (AR 17.)  She determined that Plaintiff had the following severe impairments:  seizure disorder; history of deep vein thrombosis (DVT); hypertension; chronic obstructive pulmonary disease (COPD); bilateral carpal tunnel syndrome (CTS); morbid obesity; depression; and posttraumatic stress disorder (PTSD).  (*Id.*)

---

[2] Plaintiff was 54 years old at the time she filed her SSI application and thus met the agency's definition of a person "closely approaching advanced age."  *See* 20 C.F.R. § 416.963(d).  She has since changed age category to a person of "advanced age."  *See* 20 C.F.R. § 416.963(e).

[3] SSI benefits are not available retroactively, so as a practical matter, the earliest disability date that may be claimed for purposes of SSI benefits is the protective filing date of a claimant's application.  *See*  20 C.F.R. § 416.501.  Here, Plaintiff does not rely on any effective protective filing date prior to June 24, 2016; thus, the earliest date she can be eligible for SSI benefits is June 24, 2016, the date she filed her application.

After specifically considering listings 12.04 and 12.15, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, 416.926). (AR 18.) The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform medium work with the following modifications:

> "[She could] frequently climb ramps and stairs as well as stoop; occasionally kneel, crouch and crawl; frequently reach, handle, finger and feel; avoid concentrated exposure to respiratory irritants; no work at heights or around hazardous machinery; no climbing of ladders, ropes or scaffolds' limited to simple routine tasks; can maintain concentration, persistence and pace for two hour increments with normal breaks; as well as occasionally interact with coworkers, supervisors and the public."

(AR 19.) The ALJ found that Plaintiff had no past relevant work. (AR 25.) She then determined that, based on the vocational expert's testimony, and considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including the jobs of stores laborer (DOT[4] 922.687-058), bagger (DOT 920.687-018), and checker/laundry sorter (DOT 369.687-014). (AR 25-26.) Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from the amended onset date through the date of the ALJ's decision. (AR 26.)

//
//
//

---

[4] "DOT" refers to the *Dictionary of Occupational Titles*.

3

## STANDARD OF REVIEW

This Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (citation omitted). "Even when the evidence is susceptible to more than one rational interpretation, [the Court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in her decision "and may not affirm the ALJ on a ground upon which [s]he did not rely." *Orn*, 495 F.3d at 630. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (citations omitted).

//
//
//

**DISCUSSION**

Plaintiff raises one issue: whether the ALJ properly evaluated the opinion of Plaintiff's treating physician. (Joint Stip. at 4.) For the reasons discussed below, the Court concludes that the ALJ gave specific and legitimate reasons supported by substantial evidence for rejecting the opinion of Plaintiff's treating physician.

**I.     Legal Standard**

"The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). In doing so, the ALJ must articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). An ALJ errs when she discounts an examining source's medical opinion, or a portion thereof, "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for [her] conclusion." *Id.* at 1012-13.

The opinion of a treating source is generally entitled to greater weight than the opinion of a non-treating doctor because a treating source is "most able to provide a detailed, longitudinal picture" of a claimant's medical impairments and bring a perspective to the medical evidence that cannot be obtained from objective medical findings alone. *See Garrison*, 759 F.3d at 1012; 20 C.F.R. § 404.1527(c)(2) (governing claims filed before March 27, 2017). Likewise, the opinions of examining sources are given more weight than non-examining source opinions. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). To reject an uncontradicted opinion of a treating or examining source, the ALJ must provide "clear and convincing reasons that are supported by substantial evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017). The ALJ need not accept a treating source's opinion if it is "brief,

conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Alternatively, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Trevizo*, 871 F.3d at 675. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Id.* (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

## II.   The Opinion Evidence

On either June 21, 2011 or June 21, 2018,[5] Dharamkumar Wilson Gomer, M.D., a specialist in internal medicine and Plaintiff's treating physician, completed a "Medical Opinion Re: Ability to Do Work-Related Activities (Physical)." (AR 471-73.) Dr. Gomer opined that Plaintiff could not lift more than 10 pounds occasionally or frequently; could only walk less than 2 hours during an 8-hour day (with normal breaks); and could sit and/or stand for no more than 15 minutes before changing position. (AR 471.) Every 15 minutes, Plaintiff had to walk for 15 minutes; she needed the opportunity to shift at will from sitting or standing/walking; and she sometimes needed to lie down at unpredictable intervals during a work shift (once daily). (AR 472.) Dr. Gomer stated that the foregoing opinion was based on Plaintiff's history of seizures and anxiety. (*Id.*)

Dr. Gomer opined that Plaintiff could never twist, stoop (bend), crouch, climb stairs, or climb ladders. (*Id.*) Plaintiff could not perform any reaching, handling, fingering, feeling, pushing or pulling, due to carpal tunnel syndrome. (*Id.*) Based on medical findings of seizure,

---

[5] The date of Dr. Gomer's opinion is not immediately apparent, as his handwriting is difficult to decipher. (*See* AR 473.) Because the date of Dr. Gomer's opinion was a reason given by the ALJ for discounting his opinion, the Court further discusses this point in its Analysis. *See infra* § III.

6

Plaintiff had to avoid all exposure to extreme cold, extreme heat, wetness, humidity, noise, fumes, odors, dusts, gases, poor ventilation, and hazards (machinery, heights, etc.). (AR 473.) Additionally, Plaintiff's carpal tunnel syndrome affected her physical abilities in unspecified ways. (*Id.*) Finally, Dr. Gomer anticipated that Plaintiff impairments would cause her to be absent from work more than three times per month. (*Id.*)

### III.   Analysis

The ALJ gave no weight to Dr. Gomer's opinion, reasoning as follows: "the treatment provided by Dr. Gomer [did] not support the extent of limitations provided. Specifically, treatment has consisted only of medication management other than a surgical consultation for [Plaintiff's] right wrist wherein she was found to not be a candidate for surgery. Further, the opinion predates the amended alleged onset date, which makes it less persuasive." (AR 22 (citations omitted).)

Plaintiff contends that the reasons the ALJ provided to reject Dr. Gomer's opinion are insufficient. (Joint Stip. at 6-8, 13-14.) Plaintiff first argues that the ALJ erred by asserting that Dr. Gomer's opinion was less persuasive because it predates the alleged onset date, because it was actually written in 2018, two years after the onset date. (*Id.* at 6-7, 13.) Second, Plaintiff argues that the ALJ failed to explain her statement that Dr. Gomer's treatment did not support the limitations he assessed and she impermissibly substituted her own interpretation of the medical evidence for Dr. Gomer's opinion. (*Id.* at 6-8, 13-14.) Finally, Plaintiff avers that because the ALJ's reasons for rejecting Dr. Gomer's opinion were inadequate, the Court should credit his opinion as true and remand for immediate award of benefits. (*Id.* at 8.)

The Court turns first to the issue of the date of Dr. Gomer's opinion. If Dr. Gomer authored his opinion in 2011, as the ALJ concluded, then the ALJ's rejection of the opinion as predating the onset date would be specific and legitimate. *See Carmickle v. Comm'r, Soc.*

*Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical opinions that predate the alleged onset date of disability are of limited relevance."). However, the Court cannot conclude simply by looking at the date written on Dr. Gomer's opinion that it was authored either in 2011 or 2018 because Dr. Gomer's handwriting is not clear. (AR 473.) Accordingly, the date is ambiguous; where an ambiguity exists in the record, the ALJ has an independent duty to further develop the record to resolve the ambiguity. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

Here, the ALJ erred by failing to further develop the record to resolve the ambiguity to discern the date of Dr. Gomer's opinion. This is especially so because the record suggests that Dr. Gomer authored his opinion in 2018, not in 2011. The letterhead of the opinion form shows that it was prepared by the Law Offices of Bill LaTour, Plaintiff's counsel in this action. (AR 471.) The record reveals that Plaintiff's counsel began representing her in June 2016. (AR 76 (Claimant's Appointment of Representative).) Additionally, the record consists of treatment records from Dr. Gomer dated between August 2015 and July 2018, and no earlier. (AR 303-38, 601-30; *but see* AR 137-38 (2019 letter request to Appeals Council to review ALJ decision stating Dr. Gomer's opinion as having been written in 2011.) So, while it is possible that Dr. Gomer treated Plaintiff in 2011 as well and Plaintiff's counsel had represented her in some capacity, that conclusion cannot be drawn by examining record evidence; the record suggests that the more plausible explanation is that Dr. Gomer gave his opinion in 2018 on form provided to him by Plaintiff's counsel sometime between 2016 and 2018. Thus, the ALJ failed to fulfill her duty to fully develop the record to resolve the ambiguity created by the unclear date of Dr. Gomer's opinion.

The ALJ's error, however, is harmless because the other reason provided the ALJ for rejecting Dr. Gomer's opinion was specific, legitimate, and supported by substantial evidence. An ALJ may reject the opinion of a treating physician who prescribed conservative treatment, yet opines that a claimant suffers disabling limitations. *Rollins v. Massanari*, 261 F.3d 853,

856 (9th Cir. 2001) (finding that ALJ properly rejected opinion of treating physician where physician had prescribed conservative treatment and plaintiff's activities and lack of complaints were inconsistent with physician's disability assessment). Here, the ALJ did just that—in support of her statement that the treatment Dr. Gomer provided did not support his opined limitations, the ALJ explained that Plaintiff's treatment consisted only of medication management (apart from a surgical consultation related to Plaintiff's wrist). (AR 22.) The ALJ sufficiently articulated this finding to permit this Court's review and did not substitute her own interpretation of the evidence for that of Dr. Gomer. *See Magallanes*, 881 F.2d at 755 (finding the specific and legitimate standard met where the ALJ "summarized the facts and conflicting clinical evidence in detailed and thorough fashion, stating his interpretation and making findings"); *Dupre v. Berryhill*, 765 F. App'x 258, 259 (9th Cir. 2019) ("The ALJ specifically stated [the doctor's] opinion conflicted with the fairly normal mental status examination" and although "the ALJ may have explained her decision with less than ideal clarity, the ALJ's path may be reasonably discerned." (internal quotation marks omitted)).

To uphold the ALJ's decision, however, the incongruity between Dr. Gomer's opinion and his treatment records must be supported by substantial evidence. The record shows that Dr. Gomer treated Plaintiff between August 2015 and July 2018. (AR 303-38, 601-30.) In August 2015, Plaintiff presented to Dr. Gomer for a regular checkup and medication refill complaining of leg pain and vaginal bleeding. (AR 303-04.) He did not recommend any specific treatment. (*Id.*) In January, June, and July 2016, Plaintiff saw Dr. Gomer for regular checkups and medication refills, with no additional complaints. (AR 305-06, 309-10, 314-17, 323-24.) In April 2016, Plaintiff presented for a regular checkup and medication refill with bilateral edema on her legs. (AR 307-08, 311.) Dr. Gomer's examination revealed carpal tunnel syndrome, unspecified upper limb; COPD; edema leg; menorrhagia; and anxiety. (AR 312-13.) He continued Plaintiff's pain, hormonal, and anxiety medications without altering dosages. (AR 313.) When Plaintiff presented in July 2016 with urinary incontinence and

9

lipoma on her right wrist, Dr. Gomer continued Plaintiff on existing medications, and added Percocet to her medication regimen. (AR 317, 324.)

In September 2016, Plaintiff presented to Dr. Gomer for medication refills; she also complained of hand pain and had recently had a seizure. (AR 319-21.) Dr. Gomer continued some of Plaintiff's existing medications for hyperlipidemia, gastroesophageal reflux disease, DVT, and COPD, started her on a new seizure medication, and referred her for an orthopedic surgery consultation for her carpal tunnel syndrome. (AR 321.) Between August and October 2016, Plaintiff's DVT medication was continued without alteration. (AR 325-28.) Between October 2016 and July 2018, Dr. Gomer's assessments of Plaintiff's condition generally remained constant. (*See* AR 603, 607, 612, 616, 620, 623-24, 628.) During each appointment during that period, Plaintiff presented to Dr. Gomer for a general checkup and for medication refills, and Dr. Gomer treated Plaintiff by continuing his medication regimens and, in some instances, referring Plaintiff to specialists for particularized issues. (AR 603-04 (July 2018 medication refill with referrals to specialists for migraines, to obtain diabetes shoes, and for a gynecology consultation), 606-08 (April 2018 medication refill), 612-13 (January 2018 medication refill with referral to specialist for urinary incontinence), 616-17 (October 2017 medication refill), 620-21 (April 2017 medication refill), 624 (November 2016 medication refill and referral to general surgery for carpal tunnel syndrome for evaluation and treatment), 628 (October 2016 medication refill).)

After a thorough review of the record evidence, it is clear that the ALJ accurately characterized Dr. Gomer's treatment of Plaintiff's condition. The record reveals that Dr. Gomer's treatment largely consisted of medication management apart from a surgical consultation for Plaintiff's right wrist. The record does not suggest that Plaintiff suffered adverse side effects as a result of her medications, nor that Dr. Gomer's treatment by medication management was not effective. Although Plaintiff occasionally complained of pain, more often, she had no specific complaints during her routine checkups and Dr. Gomer

simply refilled her medications.  The Court finds that this course of treatment is inconsistent with Dr. Gomer's opined limitations.  One would expect an individual with the severely disabling limitations that Dr. Gomer described to require, and have received,  much more aggressive treatment.  Yet, Dr. Gomer's treatment cannot be described as aggressive.  Thus, the "incongruity between Dr. [Gomer's] Questionnaire responses and her medical records provides a[] . . . specific and legitimate reason for rejecting Dr. [Gomer's] opinion of [Plaintiff's] limitations." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

In sum, the record shows the ALJ's rejection of Dr. Gomer's opinion on the basis of its inconsistency with his own treatment records is a specific and legitimate reason supported by substantial evidence for making her determination.  Accordingly, the ALJ's evaluation of the medical evidence  is free of material legal effort and must be affirmed.

## CONCLUSION

For the reasons stated above, the Court finds that the Commissioner's decision is supported by substantial evidence and free from material legal error.  Neither reversal of the ALJ's decision nor remand is warranted.

Accordingly, it is ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration.

//
//
//
//
//
//

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATE: July 23, 2020

*/s/ Karen L. Stevenson*
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE